## Swearingen et al. v. McGee et al.

December 10, 1946.

Rehearing denied Feb. 11, 1947.

Athol L. Taylor for appellants.

T. C. Carroll for appellees.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Royce Swearingen and others, the appellants, sought to have themselves adjudged half owners of certain real

estate claimed in its entirety by Horace C. McGee and others, the appellees, and further sought an accounting and division of the rents which had been received by appellees from the same property during the controversial period.

The chancellor having adjudged that the appellees were the exclusive owners of the property because of their adverse possession extending over a period of more than 30 years, the appellants now prosecute this appeal.

The question now confronting us is whether the chancellor's judgment of an exclusive ownership of this property in appellees is correct, that is to say whether it is a judgment properly supported by the law and facts of this case.

The substantial indications of the record of this case show that this property was conveyed, on August 17, 1891, to Maria E. Swearingen and W. T. Swearingen, her husband, by a deed, which appellants now contend vested a one-half undivided interest in their grandfather, W. T. Swearingen. However, appellees contend that this deed vested the whole estate of this property in their great aunt, Maria E. Swearingen, who thereafter executed her will in 1905 and devised this same property to her nephew, W. L. McGee, appellees' father, with remainder over to the latter's children, these appellees. Maria E. Swearingen died in 1907 and W. T. Swearingen died within a few weeks thereafter. They had no children in common, but Maria E. Swearingen had her McGee nephew, to whom she willed her property in general terms and without specific description. Appellees now claim through him. And W. T. Swearingen had, by a former marriage, a son, named J. H. Swearingen, and appellants are now claiming a half interest through him under the laws of descent. The deed of 1891 was never recorded by any one until 1944. But upon the death of Maria E. and W. T. Swearingen in 1907, W. L. McGee took absolute control of the property, rented it out, paid its taxes, collected its rental, treated it as his own. The appellees themselves continued in this practice, thereby giving such practice a continuity of about 38 years prior to this litigation. Shortly before this suit began, appellees decided to sell this prop-

erty and upon inspection of their unrecorded deed, some question arose as to a possible need of perfection of their title because of the peculiarity of the wording of the deed which was made in 1891 to their great aunt and to her husband. Considering the possibility of imperfection in their title, appellees recorded their deed of 1891 and then obtained a "curing" deed from J. H. Swearingen, appellants' father, without consideration, while the latter was sick, within a month of his death. The filing of this suit by the Swearingens followed soon after the death of their father, which occurred November 26, 1944.

The Swearingens are now standing upon (1) the validity of their title by the deed of 1891 and upon (2) the invalidity of any adverse possession of appellees and upon (3) the invalidity of the J. H. Swearingen deed of 1944. The McGees are now standing upon (1) the validity of their title by the deed of 1891 and upon (2) what they contend is their adverse possession for about 38 years and upon (3) the validity of the deed of 1944 from J. H. Swearingen to the McGees. If the McGees have good legal footing upon any of these three positions, it is obvious that they rightfully won their case in the trial court before the chancellor.

The importance of the 1891 deed and its pertinent provisions is apparent, and therefore we now copy its only clauses that might illuminate the issue to any extent, the issue of whether W. T. Swearingen took only a life-estate or a one-half undivided interest in the property conveyed by this deed:

### The Identification Clause

"This indenture made and entered into this August 17, 1891 by and between Jesse McCrocklin, of the first part and Maria E. Swearingen and W. T. Swearingen, her husband (Who hereby holds a lifetime interest in the property herein conveyed) of the second part, all of the County of Bullitt, State of Kentucky."

### The Granting Clause

"Witnesseth: That the party of the first part * * * hath this day bargained and sold and by these presents doth grant, bargain, sell, release, convey and confirm unto the party of the second part * * *"

## The Habendum Clause

"To have and to hold unto the said Maria E. Swearingen and W. T. Swearingen, her husband, their heirs and assigns forever * * *"

The general rules controlling or guiding construction of deeds are closely analogous to those applicable to contracts. Lord Mansfield said that rules of construction of deeds rested upon reason, justice, law and common sense. The primary rule of construction is that of carrying out, whenever possible, the real intention of the parties. See 8 R. C. L. 1035.

In construing a deed, the whole instrument should be considered and effect should, if possible, be given to all recitals therein. Wilson v. Wilson, 185 Ky. 272, 214 S. W. 911.

The rule uniformly adhered to in the construction of a deed is that of construing it so as to effectuate the intentions of the parties as these intentions may be manifested by the language used in the deed. Allen v. Henson, 186 Ky. 201, 217 S. W. 120.

Where the granting clause and the habendum clause are in conflict, the granting clause will prevail unless the whole instrument indicates a purpose and intention inconsistent therewith. Grainger v. Edwards, 190 Ky. 408, 227 S. W. 561.

In construing a deed containing ambiguous terms, it is proper for the court to consider all the circumstances surrounding the execution and delivery of the deed. Standard Elkhorn Coal Co. v. Bolen, 193 Ky. 342, 236 S. W. 241.

Where, on consideration of the entire deed, it appears that the grantor's intention was to vest less than a fee in a grantee, such intention will be carried into effect. Land v. Land, 172 Ky. 145, 189 S. W. 1.

And now, having stated what we consider some of the fundamental, reasonable, valid and prevailing rules of construction of deeds, we would proceed to apply them to our facts of this case as related above. These rules call for reason, justice, law, common sense, carrying out of intention, preferment of the granting clause over the habendum clause, examination of the whole in-

strument, consideration of all circumstances, vestment of whatever size estate grantor's intention seems to dictate.

In the deed of 1891 we find the name of Maria mentioned first. This is not unusual, except that in business transactions the man's name, not the woman's, usually precedes. Since Biblical times the man has been considered the head of the house, although there may be some controversy on this subject among some families of today. But the precedence of her name is a circumstance that could indicate that it was Maria's purchase, Maria's money, Maria's estate changing form. Then we find a parenthetical expression immediately following the name of W. T. in the deed, as if it were explaining why his name happened to be in the deed at all, as if hastening to define his interest even before reaching the granting clause. The parenthetical expression says that he, W. T., "hereby holds a lifetime interest in the property herein conveyed." What was the property conveyed? It was boundary X, Y, Z, as described in the body of the deed. W. T. holds then a lifetime interest in X, Y, Z. The deed seems to give him nothing more. He can have nothing more, if we interpret the intention of the parties according to the tenor and expression of the first paragraph of this instrument.

Looking at Maria's situation on the face of its presentation to us, we see her as a woman without children of her own, with a stepson, with a nephew of her own blood. Her close tie of blood and affection with the nephew were demonstrated a few years after the date of the deed of 1891 through Maria's executed will of 1905. In that will she showed a plan and purpose of passing her worldly goods through the blood line of her own kindred. Neither her husband nor any of his kindred were mentioned in Maria's will. Therefore, we raise the inquiry as to whether the plan of the will is not a continuation of the plan of the deed. In a broad sense, the two may appear to be consistent.

The deed of 1891 contains three clauses, as set out above, which tend to reach out their helping hands to aid us in discovering the real intention behind this instrument. The *identification clause* clearly and strongly favors the McGees and their theory of a mere life estate

in W. T. Swearingen. The *granting clause* offers no antagonism to the identification clause, merely conveying to "the party of the second part," but using the singular noun as if just one grantee might be in pre-eminence in the vesting of the estate of this deed. The *habendum clause* somewhat favors the Swearingens and their theory of a one-half interest in W. T. Swearingen, because this clause uses the names of both Maria and W. T. and "holds" to them and to "their heirs and assigns forever." However, if unforgetting memory refuses to remove what has been said at the very outset of this deed, we must read the habendum clause within and under the illuminating beams shed by the lamp of that parenthetical phrase contained in the deed's first clause and paragraph, its identification clause. That very first clause said that W. T. was to have only a life estate. And our memory, similar to that of an elephant or an Indian, refuses to release us from the abiding consciousness of a limitation which was tied to W. T. like a rope by reason of the usage of those words, "who hereby holds a lifetime interest."

Therefore, considering all the existing circumstances as well as the wording of all parts of the deed in question, using our reasoning and common sense the best we can, we must now conclude that the intention behind this deed was to vest a fee simple estate in Maria Swearingen, subject however, to the vestment of a life estate in W. T. Swearingen, who thereby acquired a home as long as he should live.

The chancellor and this court reached an identical destination in this case, although different routes were traveled in doing so. We traveled the route of the first issue in the case, the one we thought was the most logical and legal. The chancellor traveled the route of the second issue in this case, doubtless because he likewise thought it was the most logical and legal. In any event, the same destination having been reached, the judgment rendered in favor of appellees on the trial of this case is now hereby affirmed.